IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                          Cr. No. S-05-219-DFL

      v.                                  MEMORANDUM OF
                                          OPINION AND ORDER

JOSE A. ZAMORA,

        Defendant.

_____/

      Defendant Jose A. Zamora moves to suppress drug and other evidence seized from his person and car as a result of a search by law enforcement officers on January 27, 2005. The critical issue is whether by putting on the overhead lights of their patrol vehicle and by then asking for identification, the officers effected a seizure of Zamora without reasonable suspicion.

      Although the court held an evidentiary hearing, the material facts are not in dispute.

      Officer Bauer is a relatively experienced patrol and narcotics police officer. In 2005 he was employed by the City of Tracy as a narcotics enforcement detective.

      In December 2004 and January 2005, Bauer received 2 or 3 anonymous citizen complaint telephone calls reporting short stay traffic at 1841 S. Central Avenue in Tracy. Two of the complaints came from a single person. The complainants reported that people were coming to the residence on foot, by car, on bikes, making short stops, and making "hand-to-hand" drug buys

at the location.  More specifically, one of the complainants reported that on one occasion Victor Pena, who lived at the residence and was on searchable parole for a theft conviction, met with someone at the bottom of the driveway, went to the bumper of a pickup truck parked in the driveway to retrieve something, and then engaged in a hand-to-hand transaction with the person at the bottom of the driveway by means of a  handshake.

In mid January Bauer received information from Pena's parole officer that Pena had tested positive for methamphetamine.

Based on the above information, Bauer considered that 1841 S. Central was a "problem house," and, therefore, he began to observe the residence on five or so occasions in the month of January.   In this time period, he never observed a drug transaction involving Pena nor did he see Pena outside of the house.  He saw a couple of cars stop at the residence, but he did not see a steady stream of short term traffic associated with a drug house.

At about 8:40 p.m. on January 27, 2005, Officers Bauer and Petty were driving southbound on S. Central in a silver, unmarked patrol car.  Outside of 1841 they saw Victor Pena and one Sarah Lowe standing at the driver's side of a parked black Dodge car.  The driver's door and window was open. Bauer knew Pena and Lowe from prior contact.  In addition to the positive drug test,  he knew that Pena had been convicted of theft and had two narcotics related arrests.  He knew that Lowe was associated with persons (her father and boyfriend) who were drug users and that Lowe previously had been arrested for theft.   There were two occupants in the front of the black car;   Zamora was seated in the driver's seat.  Detective Bauer believed that the four people were engaging in a narcotics deal given the time of night, the location in front of 1841, Pena's participation, and the arrangement of the four people around the driver's open door and window, with two persons seated in the car.

The officers pulled their unmarked police car in behind the black Dodge.   They activated the red and blue lights on the police car both to signal that they were police officers and to keep the four persons from leaving.   The motor of the black Dodge was not running.  The officers got

out of their car and approached the Dodge. Neither Bauer nor Petty made a show of force, as by displaying a weapon.

Bauer went to the driver's side of the car – the driver's side door was closed by the time Bauer got to the car -- and directed Pena and Lowe to walk to the rear of the car where Officer Petty was positioned. Bauer asked Zamora for his driver's license, registration, and insurance. When Zamora reached into the glove compartment for some of these documents, Officer Bauer saw what appeared to be crystal methamphetamine in the front pouch of a sweatshirt that Zamora was wearing. Zamora handed a driver's license to Bauer that Bauer believed was false identification because neither the picture nor the height and weight information matched Zamora. Eventually Bauer asked Zamora to step outside of the car and placed him under arrest.

In the meantime, Detective Petty had performed a pat down of Pena and discovered a knife with a 3inch blade. Pena was handcuffed and put in the unmarked police car.

Once Bauer was given a false piece of identification and saw what appeared to be crystal methamphetamine in Zamora's "pouch pocket," he had probable cause to arrest Zamora. Moreover, officers may at any time approach a citizen and ask for information. Therefore, the motion turns on whether the officers had reasonable grounds for suspicion to briefly detain Zamora by activating the police lights on their police car and by then asking for identification. The court concludes that there were reasonable grounds.

"The detention of a suspect under Terry is evaluated against a standard of reasonableness under the totality of the circumstances." United States v. Christian, 356 F.3d 1103, 1105 (9th Cir. 2004) (citations omitted). "To determine whether the stop was reasonable," the court "must consider 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" Id., quoting Terry v. Ohio, 392 U.S. 1, 20 (1968). As these quotations suggest, there is a proportionality principal embedded within the Terry "reasonableness" standard: the more severe the intrusion, the more demanding the showing of suspicion or probability to justify the intrusion.

The discussion in United States v. Chaidez, 919 F.2d 1193, 1196-1198 (7th Cir. 1990) illuminates this point:

> The[] cases describe a continuum in which the necessary degree of confidence increases with the degree of intrusion. A stop without limiting the suspect's freedom requires no suspicion; a brief detention calls for reasonable suspicion; an arrest requires probable cause; invasive techniques such as surgery require more. What if the intrusion lies somewhere between *Terry* and arrest, neither a "brief, investigatory" stop nor a traditional arrest . . . One answer would be to deny that there is a "between"-to insist that all encounters must be either *Terry* stops or arrests. Yet circumstances defy such simple categorization, and if a line must nonetheless be drawn it will be arbitrary, with nearly identical cases on opposite sides. Trying to force a continuous world into two categories is not only impossible but also unnecessary when the text of the Constitution calls for inquiry into "reasonableness".
>
> . . . .
>
> Increasing the threshold probability when the intrusiveness increases ensures that privacy interests will be protected (the "reasonable suspicion" threshold from *Terry* is low) without hampering reasonable investigative techniques by the police. Another circuit has suggested this approach, United States v. Quinn, 815 F.2d 153, 158 (1st Cir.1987), and we now adopt it. Stops too intrusive to be justified by suspicion under *Terry,* but short of custodial arrest, are reasonable when the degree of suspicion is adequate in light of the degree and duration of restraint.

This case falls at the low end of intrusiveness for automobile stops. Zamora was already parked with the driver's side door open. He was not pulled over. Until he was arrested, he was not ordered outside of the car, nor was he frisked. The officers made no display of force. The police lights were used in a setting in which the two officers had a need to identify themselves to the four persons as police officers, and were unquestionably entitled to stop and search Pena who was on parole with a search condition. Asking for Zamora's driver's license was not intrusive, given that he was driving the car and that the two officers were dealing with four persons, one of whom was on parole. See United States v. Christian, supra, 356 F.3d at 1106 ("determining a suspect's identity is an important aspect of police authority under Terry."). Because this police activity barely qualifies as a seizure, it would follow under the reasoning in Chaidez that the required "articulable suspicion" standard should be minimally demanding.

Under a forgiving standard, there was certainly articulable suspicion that a drug transaction was occurring that involved Zamora. Moreover, although the question is closer,

1   even under a more demanding standard, the court finds that there was a reasonable basis for a
2   Terry stop of Zamora.    Pena was a suspected drug buyer and seller.  Either a purchase or a sale
3   by Pena was possible in the circumstances as they appeared to the officers.   Pena had recently
4   tested positive for methamphetamine.  He was on parole and had a history of drug related arrests.
5   A citizen informant had described a recent drug transaction at this very location involving Pena
6   as the seller.  Lowe was also known to associate with drug users.   The officer had considerable
7   experience in narcotics investigations and believed, based upon that experience, that he was
8   witnessing a drug deal, in part because of the juxtaposition of the four people -- with the two
9   outside the car standing next to the open door and window of the driver's side -- in addition to
10  the location and the participants.   Zamora was in the driver's seat and was having some sort of
11  contact with Pena.[1]

12      In the totality of these circumstances, the court finds that the officers had reasonable
13  suspicion to detain Zamora briefly in order to determine his identity and to investigate what he
14  was doing with Pena.  This was good police work.   Once the officer was given a fake driver's
15  license and saw what appeared to be methamphetamine in Zamora's pocket, there was probable
16  cause to arrest him.

17      For these reasons, the motion to suppress is DENIED.

18      IT IS SO ORDERED.

19  Dated: 5/9/2006

                                            _____
                                            DAVID F. LEVI
                                            United States District Judge

---

[1] The court finds that officer Bauer was an entirely credible witness.  He did not exaggerate or tailor his testimony.